**SMILEY WANG-EKVALL, LLP**
Kyra E. Andrassy, State Bar No. 207959
kandrassy@swelawfirm.com
Sharon Oh-Kubisch, State Bar No. 197573
sokubisch@swelawfirm.com
Michael L. Simon, State Bar No. 300822
msimon@swelawfirm.com
3200 Park Center Drive, Suite 250
Costa Mesa, California 92626
Telephone: 714-445-1000
Facsimile:  714-445-1002

Attorneys for Robert P. Mosier, Receiver

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| ROBERT P. MOSIER, Federal Equity Receiver for the Church for the Healthy Self aka CHS Trust, CHS Asset Management, Inc., and iCare Financial Solution, Inc., <br><br> Plaintiff, <br><br> v. <br><br> IGOR RUBCHINSKY, an individual; RUBCHINSKY LLC, an Illinois limited liability company, and BROWN WHITE & OSBORN, LLP, a California limited liability partnership, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br> 1) **AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 3439.04(A)(1));** <br><br> 2) **AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 3439.04(A)(2));** <br><br> 3) **AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 3439.05; AND** <br><br> 4) **DECLARATORY RELIEF** |

Plaintiff Robert P. Mosier, in his capacity as the federal equity receiver ("Receiver") for The Church for the Healthy Self a/k/a CHS Trust ("CHS"), CHS Asset Management, Inc. ("CAM"), and iCare Financial Solution, Inc.

("iCare" and, together with CHS and CAM, the "Receivership Entities"), alleges as follows:

## I. INTRODUCTION

1. Beginning in or about September 2014 and continuing to on or about March 13, 2019, Defendants Kent R.E. Whitney ("Whitney"), Ngoc Ha T. Nguyen ("Ha Nguyen"), and David Lee Parrish ("Parrish") (collectively, the "Individual Defendants" and, together with the Receivership Entities, the "Receivership Defendants") utilized the Receivership Entities to orchestrate at least a $33 million Ponzi scheme that primarily targeted the Vietnamese communities of Orange County and San Jose, California.

2. The vast majority of the funds that were raised were misappropriated by Whitney, Parrish and Ha Nguyen, who spent many millions of dollars of investor funds on personal expenses for themselves and for family members and friends. What they did not spend on personal expenses was used to make Ponzi payments to investors. This action is being brought to recover funds that the Receiver alleges were fraudulently transferred to or for the benefit of the Defendants.

## II. JURISDICTION AND VENUE

3. On March 13, 2019, the Securities and Exchange Commission filed a civil enforcement action against CHS, CAM, Whitney and Parrish, initiating case number 8:19-cv-00499 (the "SEC Action"). By order entered on March 14, 2019, the Court appointed the Receiver over CHS and CAM, and the assets of Whitney and Parrish.

4. This Court has jurisdiction over this action pursuant to 28 USC § 1367 because this action is ancillary to the SEC Action, and the receivership

is pending before this Court.  See Donell v. Kowell, 533 F.3d 762, 769 (9th Cir. 2008).

5. This action involves the same series of transactions as the SEC Action.

6. Venue is proper in this district because this action is ancillary to the SEC Action and the receivership remains pending before this Court.

## III. THE PARTIES

7. The Receiver is the duly appointed and acting federal equity receiver of the Receivership Entities.

8. On information and belief, defendant Igor Rubchinsky ("Rubchinsky"), at all times herein was and is an individual residing in the State of New York, County of Kings.

9. On information and belief, defendant Rubchinsky LLC at all times herein was and is licensed as an Illinois limited liability company.  Its principal place of business is believed to be 740 W Fulton St., Apt. 1007, Chicago, IL 60661-0000.

10. On information and belief, defendant Brown White & Osborn LLP ("BWO"), is a California limited liability partnership.  Its principal place of business is 333 South Hope Street, 4th Floor, Los Angeles, CA 90071.

## IV. GENERAL ALLEGATIONS

### A. The SEC Action

11. On March 13, 2019, the SEC filed its original complaint against CHS, CAM, Whitney, and Parrish ("SEC Complaint"), accompanied by an *Ex Parte Application for a Temporary Restraining Order and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Granting Expedited Discovery; (4) Requiring Defendants to Surrender Passports; and*

*(4) Requiring Accountings* that, among other things, ordered the defendants to show cause why a preliminary injunction should not be granted.

12. The SEC Complaint alleged that the defendants (1) committed fraud in violation of the anti-fraud provisions of the federal securities laws, specifically Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

13. On March 14, 2019, the District Court entered an *Order Appointing Receiver* in which it appointed the Receiver over CHS and CAM, and the assets of Whitney and Parrish, and gave the Receiver authority to take custody, control, and possession of all Receivership Property, which included all monies and funds that the Receivership Defendants owned, possessed, had a beneficial interest in, or controlled directly or indirectly.

14. On September 11, 2019, the SEC amended its original Complaint to add iCare and Ha Nguyen as defendants and to add relief defendants. On September 12, 2019, the District Court entered an amended order (1) expanding the Receivership Order in the SEC Action to include Ha Nguyen and iCare, and (2) freezing assets and requiring Ha Nguyen and iCare to provide an accounting.

15. In connection with the Receiver's motion to make an interim distribution to investors in the Receivership Entities, the Court granted the Receiver's motion to impose a constructive trust over all assets of the Receivership Estates for the sole benefit of the defrauded investors, to the exclusion of all creditors.

16. On June 8, 2021, the District Court entered an order in the SEC Action authorizing the Receiver to pursue fraudulent transfer actions.

B. **Whitney's Plea Agreement with the United States Attorney's Office**

17. On March 18, 2020, Whitney entered into a plea agreement with the United States Attorney's Office through which he admitted to engaging in a scheme to defraud investors through CHS Trust and related entities, to obtain money or property through false promises or statements, and acting with the intent to defraud. In that plea agreement, Whitney admitted that he was, in fact, guilty of two counts including mail fraud, in violation of Title 18, United States Code, Section 1341, and filing false tax returns for the years 2017 and 2018, in violation of Title 26, United States Code, Section 7206(1).

C. **The Fraudulent History of Whitney**

18. Whitney was a fraudster long before he became a pastor and founded the CHS and related entities to perpetrate the Ponzi scheme. On August 29, 2003, Whitney was registered with the Commodity Futures Trading Commission ("CFTC") as a floor broker. From May 2008 through April 2010, Whitney engaged in a scheme to avoid posting more than $96 million of margin calls when placing orders for commodity options traded on the New York Mercantile Exchange and the Chicago Mercantile Exchange. The CFTC sued Whitney on December 10, 2010, and obtained a consent order against him on May 22, 2012, permanently barring him from the commodities industry and imposing a $600,000 civil penalty.

19. In September 2011, Whitney pled guilty to one count of wire fraud in connection with the margin call fraud scheme. *See United States v. Whitney*, Case No. 1:11-cr-108 (N.D. Ill. [Eastern Div.]). As part of his scheme, he obtained more than $600,000 from approximately 10 investors for a purported commodity pool investment and for trading in futures accounts to be held jointly between Whitney and the investors. He misrepresented the use of investor funds, investor returns, and the

investment's risk.  Whitney misappropriated most of the money he received, generated bogus account statements, and made Ponzi payments.  On December 8, 2011, Whitney was sentenced to 44 months imprisonment. Whitney was released from federal custody in June 2014, after serving approximately 30 months.

### D. The Operation of CHS

20. Within two months of being released from prison, Whitney became an ordained minister through an on-line program in August 2014.

21. A month later, Whitney formed CHS, purportedly as a nonprofit, religious organization.  Whitney, Parrish, and Ha Nguyen (together, the Receivership Entities and Individual Defendants are referred to as the "Receivership Defendants"), and others acting at their direction used the internet, radio and television, as well as in-person meetings and brochures, to lure investors into a fraudulent investment scheme primarily targeting the Vietnamese communities in Orange County and San Jose, California.  Its websites provided the façade of a "virtual church".  Recordings of these appearances were often uploaded to YouTube, but it did not hold religious services typically associated with churches. The primary mission of CHS was obtaining investor funds.

22. In these appearances, CHS representatives, at the direction of Whitney, made the following claims: (1) that CHS Trust, the investment arm of CHS, guaranteed an annual rate of return of 12%; (2) guaranteed return of principal with no risk because the investments were backed by the FDIC and SIPC (Securities Investor Protection Program); (3) that in the past five years the worst return CHS realized was a 1.5% profit for the month of January 2015; (5) that the traders used by CHS had not lost money in 15 years; and (6) that CHS was audited by KPMG.  At the time these statements were made, Whitney knew the statements were false or

misleading. CHS did not produce a 12% annual return; despite millions of dollars deposited from CHS investors, little investor money went into any trading accounts in 2018; CAM was not formed until 2017, thus the statements regarding the investment performance over the past five years and fifteen years were misleading; and CHS was not audited by KPMG.

23. At the direction of the Individual Defendants and others (depending upon which salesperson the investor had spoken to) and relying upon these false statements, investors wrote checks or gave cash to CHS or iCare, and rolled over retirement, investment, or college savings assets to CAM bank accounts where the funds were commingled and then transferred to CHS.

24. As part of the scheme, Whitney directed that monthly statements be sent to victims that contained false reports of investment returns. Whitney intended to lull victims into believing their money had been invested and was consistent with the false claims made by CHS representatives.

25. The vast majority of investor funds that were deposited into CHS's bank account were misappropriated by the Receivership Defendants, who enriched themselves and used investor funds to finance their lifestyle, including paying for vacations, expensive meals out, and designer clothes for themselves and for their friends. The Receivership Entities also used approximately $11 million in Ponzi-type payments to older investors, taken from money brought in by new investors. What little was invested was lost in the market.

26. Between May 2, 2015 and March 13, 2019, the Receivership Entities raised approximately $33 million from investors.

27. The Receivership Defendants misappropriated or dissipated the vast majority of the roughly $33 million raised from investors, except for the over $5 million that was seized just before the filing of the SEC Action.

CHS returned approximately $12.8 million of the amount raised to investors through Ponzi payments or by making payments to creditors on their behalf

### E. Defendants

28. On or about October 29, 2018, CHS wrote a check payable to Defendant Rubchinsky LLC totaling $100,000.00 with the word "Donation" in the memo line. The check cleared CHS's bank on or about December 7, 2018. This transfer was made through its checking account held in the name of CHS at Prestige Community Credit Union ("Check Transfer"). A copy of this check is attached hereto and incorporated herein as Exhibit "A."

29. On information and belief, the Receiver alleges that several months later, Rubchinsky loaned Whitney $50,000.00. The loan agreement, a copy of which is attached hereto and incorporated herein as Exhibit "B," does not state the purpose of the loan and provides that the loan does not accrue interest payments and is to be repaid when Whitney is financially stable or March 13, 2021, with payments due every thirty days until the loan is repaid, although the note does not specify the amount of the monthly payments. Once the loan was funded, Whitney held legal and equitable title to the $50,000.00. The Receiver is informed and believes and based thereon alleges that Whitney used the $50,000.00 in loan proceeds to fund a $50,000.00 retainer with BWO to represent him in connection with the SEC Action and related investigations. The Receiver is further informed and believes that the fees incurred by BWO as of the date of *Order Appointing Receiver* are less than $50,000. The Receiver made demand upon BWO for turnover of the retainer, but counsel for Rubchinsky objected to that request. The Receiver is informed that BWO remains in possession of the funds.

30. Given that the Receivership Entities were operating an investment fraud with no legitimate business in violation of securities laws, the Receiver is informed and believes that no legitimate services were

provided by Rubchinsky LLC to the Receivership Entities in exchange for the Check Transfer.

31. Pursuant to the *Order Appointing Receiver* and given the imposition of a constructive trust over all assets of the Receivership Estates for the sole benefit of defrauded investors, the Receiver alleges that the funds being held by BWO are funds in which Whitney holds a legal and equitable interest and that are therefore property of the receivership estates available solely for the benefit of defrauded investors.

## FIRST CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(1))**

**(Against Rubchinsky LLC)**

32. The Receiver realleges and incorporates by this reference paragraphs 1 through 31, above, as though set forth herein in full.

33. During the four calendar years prior to the Receiver's appointment, a payment of $100,000.00 was made to or for the benefit of Defendant Rubchinsky LLC.

34. The Check Transfer was made with the actual intent to hinder, delay or defraud CHS's creditors.

35. The Check Transfer is avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(1).

36. The Receiver is entitled to a recovery against Rubchinsky LLC in the sum of $100,000.00, with interest thereon at the legal rate.

///
///
///

**SECOND CLAIM FOR RELIEF**

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.04(a)(2))**

**(Against Rubchinsky LLC)**

37. The Receiver realleges and incorporates by this reference paragraphs 1 through 31, above, as though set forth herein in full.

38. CHS did not receive reasonably equivalent value in exchange for the Check Transfer.

39. At the time the Check Transfer was made by CHS, CHS was engaged in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

40. At the time CHS made the Check Transfer, CHS intended to incur, or believed or reasonably should have believed that it would incur debts beyond its ability to pay as such debts became due.

41. The Check Transfer is avoidable by the Receiver under applicable law, including California Civil Code Section 3439.04(a)(2).

42. The Receiver is entitled to recovery against Rubchinsky LLC in the amount of $100,000.00, with interest thereon at the legal rate.

**THIRD CLAIM FOR RELIEF**

**(For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code Section 3439.05)**

**(Against Rubchinsky LLC)**

44. The Receiver realleges and incorporates by this reference paragraphs 1 through 31, above, as though set forth herein in full.

45. CHS currently has creditors whose claims arose before the Check Transfer was made.

46. CHS received less than reasonably equivalent value in exchange for the Check Transfer.

47. At the time of the Check Transfer, CHS was insolvent.

48. The Check Transfer is avoidable by the Receiver under applicable law, including California Civil Code Section 3439.05.

49. The Receiver is entitled to recovery against Rubchinsky LLC in the amount of $100,000.00, with interest thereon at the legal rate.

## FOURTH CLAIM FOR RELIEF

### (For Declaratory Relief)

### (Against BWO and Rubchinsky)

50. The Receiver realleges and incorporates by this reference paragraphs 1 through 31, above, as though set forth herein in full.

51. The Retainer is an interest of Whitney in property that is property of the Receivership Estate as set forth in the *Order Appointing Receiver*. The Receiver is informed that BWO is willing to turn the Retainer over to the Receiver but Rubchinsky has objected to it doing so, claiming that he is instead entitled to the Retainer because it was allegedly funded with proceeds of its loan to Whitney.

52. Accordingly, there is a dispute regarding ownership of the Retainer, and the Receiver requests a judicial determination that the Retainer is property of the receivership estate.

## PRAYER

WHEREFORE, the Receiver prays as follows:

1. For judgment against Rubchinsky LLC in the sum of $100,000.00;

2. For interest at the legal rate from the date of the Check Transfer;

3. For a declaratory judgment that the Retainer is property of the receivership estate and an order directing its turnover to the Receiver;

4. For costs of suit; and

5. For such other and further relief as the Court deems appropriate.

DATED: October 28, 2022         SMILEY WANG-EKVALL, LLP

By:     /s/ Kyra E. Andrassy
KYRA E. ANDRASSY
Attorneys for Robert P. Mosier, Receiver

# EXHIBIT "A"

**Image of 181640**  Close  Print



# EXHIBIT "B"

# PERSONAL LOAN AGREEMENT

**Loan Amount:** Fifty Thousand Dollars ($50,000.00)

**Date:** March 13, 2019

**I. THE PARTIES.** For the above value received by <u>Kent Whitney</u> with a mailing address of <u>1143 Hester Ave.</u>, City of <u>San Jose</u>, State of <u>California</u>, (the "Borrower"), agrees to pay <u>Igor Rubchinsky</u> with a mailing address of <u>740 W. Fulton Apt. 1007</u>, the City of <u>Chicago</u>, State of <u>Illinois</u>, (the "Lender").

   a. Personal Relation. The Borrower is the <u>Friend</u> to the Lender.

**II. PAYMENT.** This agreement, (the "Note"), shall be due and payable, including the principal and any accrued interest, in one of the following ways:

☐ Once per week beginning on _____, 20____ and to continue every seven (7) days until the balance is paid.

☐ Once per month beginning on _____, 20____ and payment is due every thirty (30) days until the balance is paid.

   Other <u>Loan to be repaid when Kent Whitney is financially stable and/or whichever comes first loan repayment to begin on March 13, 2021 and payment is due every thirty (30) days until the balance is paid.</u>

All payments made by the Borrower are to be applied first (1st) to any accrued interest and then to the principal balance. The total amount of the loan shall be due and payable on the ___ 31st day of December, 2021.

**III. INTEREST.** The Note shall

   Bear interest at a rate of ____0.00____ percent (__0.00_%) compounded annually. The rate must be equal to or less than the usury rate in the State of the Borrower.
   Not bear interest.

**IV. PREPAYMENT.** The Borrower has the right to pay back the loan in full or make additional payments at any time without penalty.

**V. REMEDIES.** No delay or omission on part of the holder of this Note in exercising any right hereunder shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The rights and remedies of the Lender shall be cumulative and may be pursued singly, successively, or together, in the sole discretion of the Lender.

Page 1 of

Scanned with CamScanner

**VI. EVENTS OF ACCELERATION.** The occurrence of any of the following shall constitute an "Event of Acceleration" by the Lender under this Note:

    (a)    Borrower's failure to pay any part of the principal or interest as and when due under this Note; or

    (b)    Borrower's becoming insolvent or not paying its debts as they become due.

**VII. ACCELERATION.** Upon the occurrence of an Event of Acceleration under this Note, and in addition to any other rights and remedies that Lender's may have, Lender shall have the right, at its sole and exclusive option, to declare this Note immediately due and payable.

**VIII. SUBORDINATION.** The Borrower's obligations under this Promissory Note are subordinated to all indebtedness, if any, of the Borrower, to any unrelated third party lender to the extent such indebtedness is outstanding on the date of this Note and such subordination is required under the loan documents providing for such indebtedness.

**IX. WAIVERS BY BORROWER.** All parties to this Note including the Borrower and any sureties, endorsers, and guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

**X. EXPENSES.** In the event any payment under this Note is not paid when due, the Borrower agrees to pay, in addition to the principal and interest hereunder, reasonable attorneys' fees not exceeding a sum equal to the maximum usury rate of __3.99__ percent (__3.99__%) in the State of __Illinois__ of the then outstanding balance owing on the Note, plus all other reasonable expenses incurred by Lender in exercising any of its rights and remedies upon default.

**XI. GOVERNING LAW.** This Note shall be governed by, and construed in accordance with, the laws of the State of Illinois (STATE NAME).

Page 2 of

Scanned with CamScanner

**XII. SUCCESSORS.** All of the foregoing is the promise of Borrower and shall bind Borrower and Borrower's successors, heirs and assigns; provided, however, that Lender may not assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the holder of this Note.

**IN WITNESS WHEREOF,** Borrower has executed this Promissory Note as of the day and year first above written.

**Borrower's Signature:** _[signature]_     Print: Kent Whitney

**Lender's Signature:** _[signature]_     Print: Igor Rubchinsky

**Witness's Signature:** _[signature]_     Print: RICHARD D. WHITNEY

**Witness's Signature:** _____     Print: _____

Page 3 of

Scanned with CamScanner